UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

JAMES R.,[1]

Plaintiff,

v.

MARTIN J. O'MALLEY,[2]

Defendant.

No. 4:22-cv-00165-KMB-TWP

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff James R. applied for disability benefits from the Social Security Administration ("SSA") on March 19, 2021, alleging an onset date of January 8, 2021. [Dkt. 13-3 at 10.] Administrative Law Judge Renita K. Bivins (the "ALJ") issued a decision on March 3, 2022, concluding that James was not disabled and therefore not entitled to receive disability benefits. [Dkt. 13-2 at 20-37.] The Appeals Council denied James' request for review on October 27, 2022. [Dkt. 13-2 at 2-4.] On December 27, 2022, James timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. [Dkt. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. RELEVANT BACKGROUND

James was 48 years old when he applied for disability benefits. [Dkt. 13-3 at 10.] He completed eleventh grade and previously worked as a Parts Salesperson, Hardware Supply Sales Representative, and General Clerk for an industrial supplies company.[3] [Dkt. 13-2 at 83.]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that James was not disabled. Specifically, the ALJ found as follows:

- At Step One, James had not engaged in substantial gainful activity since January 8, 2021, which is the alleged onset date. [Dkt. 13-2 at 22.]
- At Step Two, James had the following severe impairments: hidradenitis suppurativa[4] and obesity. [*Id.*]
- At Step Three, James did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [*Id.* at 25.]
- After Step Three but before Step Four, James has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: should avoid concentrated exposure to extreme hot, extreme cold, wetness, humidity and poorly ventilated areas, work in food service, and concentrated exposure to chemical." [*Id.* at 26.]
- At Step Four, James was capable of performing his past work as a Parts Salesperson, Hardware Supply Sales Representative, and General Clerk. [*Id.* at 34.]
- At Step Five, relying on testimony of the vocational expert ("VE"), and considering James' age, education, and RFC, there were jobs that existed in significant numbers in the national economy that James could have performed through the date of the decision, including Store Laborer, Dayworker, Machine Packager, Bagger, and Motor Vehicle Assembler. [*Id.* at 35-37.]

## III. DISCUSSION

James claims that the ALJ erred in two ways: (1) by rejecting the expert medical opinion of James' treating dermatologist, Dr. Carrie Davis, and (2) by interpreting objective medical

[3] The relevant evidence is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Hidradenitis suppurativa (HS) is a skin disease characterized by recurrent nodules or abscesses and chronic suppurating lesions. [Dkt. 13-7 at 47.]

evidence on her own in assessing James' RFC instead of relying on expert medical opinions. [Dkt. 16 at 8, 18.] The Court will address these issues in turn.

**A. Dr. Davis' Expert Medical Opinion**

James argues that the ALJ rejected Dr. Davis' expert medical opinion without explaining how her opinion was inconsistent with or unsupported by other evidence in the record. [Dkt. 16 at 8.] He argues that the ALJ considered James' pre-onset ability to work even though his condition became worse in April 2021, that the ALJ relied on physical exam findings from the consultative examiner, Dr. Nieters, that were not relevant to his skin condition, that the ALJ was overly concerned with a lack of evidence supporting a MRSA diagnosis, and that the ALJ mischaracterized Dr. Davis' narrative letter dated January 21, 2022. [Dkt. 16 at 9-14.] James also argues that the ALJ failed to incorporate James' photosensitivity into the RFC or the hypotheticals she posed to the VE. [*Id.* at 8-9.]

In response, the Commissioner argues that the ALJ reasonably concluded that Dr. Davis' opinion was unsupported by her own treatment notes, which did not indicate that James had difficulty standing, sitting, lifting, using his hands, or concentrating, or that he had pain, itching, or inflammation. [Dkt. 18 at 3-4.] He also argues that Dr. Davis' opinion was inconsistent with Dr. Nieters' exam findings, which showed that James had normal range of motion in his joints, full strength in his arms and legs, excellent dexterity, and full grip strength; the ability to lift each leg 50 inches, walk on toes and heels, squat, and jump; and a negative Phalen's test for neuropathy. [*Id.* at 4-5.] He also argues that the ALJ reasonably found that Dr. Davis' opinion that James was depressed and suicidal as a result of his hidradenitis suppurativa was inconsistent with the consultative examination by psychologist E. Ann Miller, Ph.D., who noted that James attributed his depression to his relationship with his mother and denied any history of self-harm. [*Id.* at 5.]

The Commissioner argues that the ALJ reasonably considered that he had worked for the same company for 15 years despite having hidradenitis suppurativa the entire time. [*Id.* at 8.] Although James' treatment notes indicate that his condition had become worse in April 2021, the Commissioner points out that those same treatment notes show that the worsening of James' condition occurred when he temporarily ran out of medication. [*Id.* at 8.] To the extent that the ALJ may have erred by failing to incorporate James' sunlight restriction into the hypotheticals she posed to the VE, the Commissioner argues that any such error would be harmless because James' previous jobs and several of the alternative jobs identified at Step Five do not involve prolonged sunlight exposure. [*Id.* at 6-7.]

In reply, James argues that the ALJ's failure to incorporate his sunlight restriction is not harmless; even though James works inside, he argues that returning to work could require him to "have some exposure to sunlight walking into and out of the office space or by sitting next to windows inside an office space." [Dkt. 19 at 2.] He also argues that Dr. Nieters' exam focused on strength and range of motion but that James' mobility issues arise from the fact that movement chafes his lesions. [*Id.* at 3.]

In determining the weight to give a medical source opinion or prior administrative finding, the ALJ considers a number of factors, including: (1) whether the opinion is supported by objective medical evidence and explanations; (2) whether the opinion is consistent with evidence from other medical and nonmedical sources; (3) the treatment relationship between the claimant and the person giving the opinion; (4) the specialization of the person giving the opinion; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The first two factors—supportability and consistency—are the most important. 20 C.F.R. § 404.1520c(b)(2). But when "two or more medical opinions or prior administrative medical findings about the same

issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ "will articulate how he considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)." 20 C.F.R. § 404.1520c(b)(3).

The Court finds that there is substantial evidence supporting the ALJ's finding that Dr. Davis' expert medical opinion was inconsistent with and unsupported by other evidence in the record. On July 23, 2021, Dr. Davis completed a disability form for hidradenitis suppurativa. [Dkt. 13-7 at 33-34.] She opined that James could stand for no more than 30 minutes at a time and no more than 60 minutes in an 8-hour workday; that he could sit for no more than 60 minutes at a time and no more than 120 minutes in an 8-hour workday; that he could occasionally lift more than 20 pounds, frequently lift less than 5 pounds, rarely use his hands for fine or gross manipulation, rarely tolerate heat, and occasionally tolerate cold. [*Id.* at 33] She also opined that James suffered from moderate to moderately severe pain and that he would be absent from work 4 days per month due to his condition. [*Id.*] On January 21, 2022, Dr. Davis wrote a letter "To whom it may concern" stating that she has been treating James for seven years, that his skin condition has caused him depression and suicidal ideation, that he has a history of MRSA, that she believes he suffers from central pain syndrome and neuropathic pain related to his skin condition, and that stress at work can lead to exacerbation of his skin condition. [*Id.* at 47.]

The ALJ identified multiple aspects of Dr. Davis' opinion that were unsupported by or inconsistent with the record. Contrary to Dr. Davis' opinion, the medical record does not include lab results showing that James has a history of MRSA. [Dkt. 13-2 at 33.] Nor do his treatment notes document pain, which is the main focus of his disability claim. [*Id.*] Indeed, one treatment note from March 2020 states that James "denies any pain or itchiness." [Dkt. 13-7 at 3.] And in December 2021, James stated that he takes over-the-counter Aleve for itchiness but did not

mention pain. [Dkt. 13-2 at 30 (citing Dkt. 13-6 at 67).] Dr. Davis opined that James could rarely use his hands for fine or gross manipulation, but there is no evidence that he has lesions on his hands or that his condition otherwise limits him in this way. [Dkt. 13-7 at 33.] Nor is there any medical evidence supporting her opinion that James suffers from neuropathic pain or central pain syndrome. Finally, Dr. Davis attributed James' depression to his hidradenitis suppurativa, but James told consultative examining psychologist Dr. Miller that his depression stems from issues with his mother that go back more than 20 years. [*Id.* at 21.] Given the significant deference that courts give to ALJs in assessing credibility, these supportability and consistency findings amount to substantial evidence supporting the ALJ's decision to discredit Dr. Davis' expert opinion.

James argues that hidradenitis suppurativa is a condition that involves painful skin lesions, and that for this reason, the ALJ should have accepted as true his allegations of debilitating pain even though pain was not expressly documented in his treatment records. [Dkt. 19 at 5.] But pain is something that might vary over time and from person-to-person. Assuming that every person with hidradenitis suppurativa experiences debilitating pain is at odds with the Supreme Court's guidance that federal courts should avoid sweeping, categorical rules in adjudicating disability appeals and instead consider the facts on a case-by-case basis. *See Biestek*, 139 S. Ct. at 1157. It also runs contrary to the Seventh Circuit's guidance that "the need for restrictions cannot be inferred from the diagnosis alone." *McGillem v. Kijakazi*, 2022 WL 385175, at *4 (7th Cir. 2022); *see also Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007) ("the existence of these diagnoses and symptoms does not mean the ALJ was required to find that [Plaintiff] suffered disabling impairments."). Indeed, in March 2020, James denied having any pain or itchiness, which belies his argument that debilitating pain is a universal symptom of hidradenitis suppurativa. [Dkt. 13-7 at 3-6.]

Ultimately, reviewing courts take a deferential approach to the ALJ's credibility determinations, and the ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability" to withstand review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). In this case, the ALJ identified numerous ways in which Dr. Davis' opinion was either unsupported by or inconsistent with the medical record, and based on those findings, she determined that Dr. Davis' medical opinion was largely not persuasive. James may disagree with how the ALJ weighed the medical opinion evidence in this case, but he has not shown that the ALJ's credibility determinations amounted to legal errors. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (courts may not reweigh the evidence when reviewing administrative disability proceedings).

Finally, the Court considers whether the ALJ should have incorporated James' sunlight restriction into the hypotheticals she posed to the VE. On July 12, 2021, Dr. Davis noted that James' Doxycycline prescription could result in possible photosensitivity and increased risk for sunburn. [Dkt. 13-7 at 27.] She advised that James should "avoid sunlight if possible. When exposed to sunlight, patient should wear protective clothing, sunglasses, and sunscreen." [*Id.*] The ALJ found these limitations "somewhat persuasive" but did not expressly incorporate them into the RFC or the hypotheticals she posed to the VE. [Dkt. 13-2 at 31.]

The Court finds that any error the ALJ made in failing to incorporate James' sunlight restriction was harmless and does not provide a basis for reversal. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) ("But if the error leaves us convinced that the ALJ would reach the same result on remand, then the error is harmless and a remand is not required."). James' previous employment involved working indoors, and there is no evidence that any of his previous jobs involved prolonged exposure to sunlight. Moreover, Dr. Davis merely opined that Doxycycline put James

at an increased risk of sunburn and that he should either avoid sunlight or wear protective clothing, sunglasses, and sunscreen. [Dkt. 13-7 at 27.] She did not recommend that James must avoid all sunlight. Contrary to James' argument before this Court, the record does not support a reasonable conclusion that his medical condition precludes work that involves brief or incidental exposure to sunlight, such as the exposure to sunlight he might encounter while walking into an office building. Thus, even if the ALJ had expressly incorporated James' sunlight restriction into the hypotheticals she posed to the VE, the outcome would have been the same and any error was therefore harmless.

In sum, the ALJ's decision to discredit much of Dr. Davis' expert medical opinion is supported by substantial evidence. The ALJ identified multiple ways in which Dr. Davis' opinion was inconsistent with or unsupported by other evidence in the record. To the extent the ALJ may have erred by failing to incorporate James' sunlight restriction into the RFC or into the hypotheticals she posed to the VE, any such error is harmless because James previously worked indoors and Dr. Davis' sunlight restriction did not preclude incidental exposure to sunlight. Accordingly, James' request for relief on this ground is denied.

**B. The ALJ's interpretation of medical evidence**

James argues that the ALJ improperly "played doctor" and interpreted medical evidence on her own in determining his RFC. In support, he notes that the ALJ found Dr. Davis' opinion unpersuasive and "implicitly rejected" the opinions of the state agency consultants. [Dkt. 16 at 18-20.] He asks that this case be remanded so that the ALJ can "get the opinion of a medical expert, preferably a dermatologist, regarding likely functional limitations for the claimant. Then she should weigh that medical opinion in comparison to Dr. Davis's opinions, using the appropriate factors for weighing all medical opinion evidence." [*Id.* at 20.]

In response, the Commissioner argues that the ALJ did not play doctor but instead relied on objective evidence in accordance with SSA regulations. [Dkt. 18 at 9-13.] Such evidence included findings from consultative examiner Dr. Nieters, the fact that James' condition was well-controlled by medication, and James' ability to engage in daily activities. [*Id.* at 9-11.] The Commissioner also argues that the ALJ was not required to accept or adopt the opinion of any medical expert in determining James' RFC, and James has not identified any new evidence that would require the ALJ to seek an additional expert medical opinion. [*Id.* at 12-13.]

In reply, James reiterates his argument that the ALJ made medical judgments on her own and that she should have sought an additional medical expert to review medical evidence that post-dated that state agency consultants' opinions. [Dkt. 19 at 8-10.] He does not identity the new medical evidence that he believes the expert should review. Instead, he argues that the ALJ "found that additional evidence at the hearing level showed the claimant's condition had a greater effect on his ability to work, based on the treating source medical opinions, updated examinations, and the claimant's testimony." [*Id.* at 9-10.]

"A disability claimant's RFC describes the maximum she can do in a work setting despite her mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (citing 20 C.F.R. § 404.1545(a)). "When determining an individual's RFC, the ALJ must consider all limitations that arise from medically determinable impairments." *Thomas*, 745 F.3d at 807. When evaluating the intensity and persistence of a claimant's symptoms, including pain, the ALJ considers numerous factors such as the objective medical evidence, reports from medical and non-medical sources, the claimant's daily activities, the effectiveness of medication, and treatments other than medication. 20 C.F.R. § 404.1529(c). In reviewing the medical record and determining

the RFC, the ALJ "must not succumb to the temptation to play doctor" or reach conclusions outside her lay expertise. *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021).

In this case, the ALJ appropriately relied on James' treatment records, findings from consultative examiner Dr. Nieters, James' daily activities, and the effectiveness of James' medications and other treatments. She noted that Dr. Nieters observed evidence of lesions and scarring but did not find that these lesions limited his strength, range of motion, dexterity, or his ability to walk, squat or jump. [Dkt. 13-2 at 28-29.] She considered James' testimony about the exacerbating effects his obesity had on his hidradenitis suppurativa. [*Id.* at 29.] She noted that his condition did not impact his ability to engage in daily activities, as he was able to drive a car, prepare meals, perform housework, perform personal care, take care of his dogs, and spend time with friends fishing and playing cards. [*Id.* at 29-30.] She noted that James' treatment records showed that his condition was well-controlled with medication and other treatments. [*Id.* at 30.] And she considered the fact that James had worked full-time for more than 15 years despite having hidradenitis suppurativa the entire time. [*Id.*] James does not point to a specific instance where the ALJ offered an independent medical judgment about a diagnosis, etiology, treatment, prognosis, or other areas outside the realm of her expertise. Instead, the ALJ merely considered the record before her, weighed the evidence, and determined James' RFC.

The ALJ may not "interpret new and potentially decisive medical evidence without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (cleaned up). When new information arises during the course of the administrative proceedings, the question of whether the ALJ should solicit an additional expert medical opinion comes down to whether the new information "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the

subsequent] report," or whether the updated information was minor enough that the ALJ did not need to seek a second opinion. *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJ erred by determining on her own that the claimant's new MRI was "similar" to existing evidence and that claimant's need for a hip replacement would not affect her ability to stand or walk for six hours per day)).

Here, James does not point to any new information that required the ALJ to seek an additional expert medical opinion. Instead, he argues that "the ALJ herself found that additional evidence at the hearing level showed the claimant's condition had a greater effect on his ability to work, based on the treating source medical opinions, updated examinations, and the claimant's testimony." [Dkt. 19 at 9-10.] This statement appears to reference the ALJ's decision not to credit the state agency consultants' opinion that James' hidradenitis suppurativa was non-severe because of "additional evidence received at the hearing level that was not available to the State agency and shows that the claimant's condition has a greater effect on the claimant's ability to perform basic work activities." [Dkt. 13-2 at 34.]

The Court notes that the last state agency consultant provided his opinion that hidradenitis suppurativa was non-severe on August 12, 2021. [Dkt. 13-3 at 11.] This consultant was not able to review James' treatment notes from November 12, 2021, in which Dr. Davis described an incision and drainage of a lesion on James' left buttock. [Dkt. 13-7 at 35-45.] Nor was the consultant able to review Dr. Davis' January 2022 letter in which she described the nature of hidradenitis suppurativa or James' hearing testimony describing his experience with hidradenitis suppurativa. [Dkt. 13-7 at 47.] While the ALJ determined that this additional information supported a finding that hidradenitis as a severe impairment, the ALJ did not seek an additional expert medical opinion for purposes of determining James' RFC. [Dkt. 13-2 at 34.]

The Court finds that James' November 2021 treatment notes, Dr. Davis' January 2022 letter, and James' hearing testimony were not so significant that the ALJ needed to solicit an additional expert medical opinion before determining James' RFC. That information did not fundamentally change the picture of James' ability to function in a work setting. This case is distinguishable from others where the ALJ erred by attempting to interpret the results of medical tests or images without the aid of a medical expert. *See e.g.*, *Stage*, 812 F.3d at 1125. Thus, it was within the ALJ's discretion to rule on James' disability claim without soliciting an additional expert medical opinion after the hearing. *See Hess v. O'Malley*, 92 F.4th 671, 678 (7th Cir. 2024) (while the ALJ has a duty to develop the record in disability proceedings, "the reviewing court defers to the ALJ on the question of how much evidence must be gathered"); *Bertaud v. O'Malley*, 88 F.4th 1242, 1245 (7th Cir. 2023) ("Deference comes from the practical reality that no record is complete—one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on.") (internal quotations removed).

James has not shown that the ALJ improperly played doctor by interpreting the medical evidence on her own, nor has he shown that the ALJ needed to obtain an additional expert medical opinion to assess James' November 2021 treatment notes, Dr. Davis' January 2022 letter, or James' own hearing testimony. Accordingly, James' request for relief on this issue is denied.

## IV. CONCLUSION

The standard for disability claims under the Social Security Act is stringent. *Plessinger v. Berryhill*, 900 F.3d 909, 911 (7th Cir. 2018). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010) (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). "Even

claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by James to reverse the ALJ's decision that she was not disabled during the relevant period. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

**So ORDERED**.

Date: 3/14/2024

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

Electronic distribution to counsel of record via CM/ECF